of Remy Laba v. JBO Worldwide Supply Inc. May it please the Court, good afternoon, Your Honors. My name is Kevin Murphy, representing Remy Laba, and Kenneth Sussmane, who is my co-counsel in representing Remy Laba. There's a cross-appeal and then there's an appeal, and in each of those appeals it demonstrates exactly what is wrong about the cross-appellant's position. In the appeal, Remy Laba, who has the benefit of restraint and discretion when Your Honors are reviewing a decision, when he points out that there is an erroneous assessment of the evidence, such as when he was found to be the forger responsible for the alleged forgery, when the Court reduced the standard to a standard of known or should have known that this was a forgery, he has the benefit of having exacting findings on that, and this Court reviews those findings, and if those findings are an erroneous statement of law, as we have alleged, if they are an abuse of discretion, they're reversed. Well, the difference in the cross-appeal is quite remarkable. The cross-appeal requests that Your Honors go back and credit what is uncredited to provide for witness testimony that's not been available on the record and find that from the entire litigation, Mr. Laba is responsible for attorney's fees. This is a reviewing court. According to Judge Justice Roberts, it calls strikes. It calls balls. It does not relitigate issues. It does not make factual findings where there are none. There is simply no basis for the cross-appeal. And I understand the argument there. They entered into a stipulation which basically said, we agree each party bears their own attorney's fees except for the motion for sanctions, which remains outstanding for the Court to litigate. So assuming you're correct on that, let's deal with the direct appeal. Of course. Forget the cross-appeal for a moment. Of course. And my question is, how was it an abuse of discretion to impose this sanction of attorney's fees when the court based it on not so much who created the signature on the false document that was submitted, but the court found that as of, I think it was December 2021, both counsel and Mr. Laba knew or should have known if they didn't directly know that this document was false and failed to correct that falsity, that failed to correct that with the court, and in fact insisted that although they weren't relying on it ultimately at the end, that it was not, that it was a legitimate document or that in fact they had received a signed contract. And the court went through a very detailed analysis of all the evidence it heard during the hearing. And I guess help me figure out how the court abused its discretion. You're right. We don't get to relitigate. We give a lot of deference to the court who hears from the witnesses firsthand. So what's good for the goose is good for the gander. If we don't get to relitigate their cross-appeal, why do we get to relitigate this? So we're not relitigating this at all. There appears to be a misapprehension of fact, and the misapprehension of fact I think is caused by the briefing from JBO's side. Ultimately, this written agreement was never attached, never relied upon in the complaint. If your honors go to the joint appendix, it's on page 72. The joint appendix refers to a written agreement. It refers to a finder's fee agreement. It does not refer to a written agreement. If your honors go through paragraphs 14 through 28, you'll find that there's no mention of provisions of a contract. There's no reliance on it. And the district court said, I understand that at one point, Mr. Laba and his attorney, we drew reliance on that claim that this was a legitimate signature or agreement or claim of a written agreement. But the court said the timing of that withdrawal was suspicious. In light of all the other evidence, the court found that counsel either knew, both counsel and Mr. Laba, knew or should have known that this was a fraudulent document and nonetheless failed to correct the record, failed to say not only are we not relying on a written agreement, we want to correct the court. We want to withdraw this claim. We want to withdraw this. But that didn't happen. So how is that an abuse of discretion? Again, it's a misapprehension of fact, your honors. It's a matter of record that this was pointed out that this was not an authenticatable document, that the document had no email attachment. Misapprehension of fact. The trial court made a wrong factual finding. Is that your claim? I guess I'm struggling to understand what you mean by misapprehension of fact. So what appears in the district court's decision is the district court seemed to be well aware that it was not attached to the complaint, that the complaint actually pled in both directions in a way, allowed for a written agreement to come into play, and it allowed for a potential oral, an agreement of oral enforcement. And so what happened was, as we get into the situation with Judge Parker, and Judge Parker held a hearing, Judge Parker seemed to reach the conclusion, because of this known or should have known misapprehension of law now, that this should not have gone as far as it went. That is the impression that I have from the record, and that's what I believe is going on. What I believe is the defect is this negligence defect. It's a defect that this court pointed out in the Rosbach v. Montefiore matter. There's got to be bad faith. Bad faith, not simply negligence on the part of an attorney, but bad faith. Right, but the court found bad faith. It did. The court said, I find that both Mr. Lava and his counsel acted in bad faith. So how did the court get that wrong? So let's look at that section in the joint appendix. It appears in the joint appendix at JA 1377. There is no doubt that Lava and his counsel acted in bad faith. When arguing that the fraudulent contract simply could not be authenticated, when they knew or should have known that Liebenberg's signature was fabricated and there was no bona fide written agreement between JBO and Lava. Bad faith, according to Schlaefer. Bad faith, according to international text, is not known or should have known. It is not that. It is, we have raised a baseless claim, a claim without color of law, and done so for an improper purpose. That is an intense standard. I understand that your complaint does not specifically reference the written agreement. But after filing a complaint, your adversaries move for sanctions. They say you're relying on a forged document. I also understand that at the time of the summary judgment motion, which is decided against your client, you specifically tell the court, we are not relying on this agreement. But in between, when they do move for sanctions, I don't see that your client says the written agreement is irrelevant, we're not relying on it. Instead, there are various filings in which the position of your client is that they deny that it's forged. And that prompts the hearing. And so to the extent this is a fraud on the court, is it at that point, when in connection with a motion for sanctions, you deny the basis for the motion, factually deny it, it's not that you simply withdraw the agreement as a relevant document for purposes of the case, is it at that point that you can be charged with committing a fraud on the court? And to the extent you persist, your client, that is, persists in asserting that the document is not forged, can that be found to be bad faith? Mr. Laba and Mr. Suspain did a due diligence investigation after being notified that Liebenberg's signature was not authentically on the document, and they determined that there were a whole host of other ways to proceed. But that goes to a factual dispute with the court's ultimate finding, that it was forged and you knew it. But, I mean, to the extent I've been hearing you suggest that, well, there is no fraud on the court because you weren't relying on the agreement. I'm asking whether you're opposing a motion for sanctions by denying the fraud that they've charged you with is itself a fraud on the court. You have an obligation as an attorney for certain that when there is an allegation of forgery in a document that you're relying on, that you investigate it. And Mr. Suspain did investigate it. He brought in Mr. Lopresti, an expert on this matter, long before summary judgment, to determine whether or not there was a forgery. Mr. Lopresti did not arrive at the conclusion that there was a forgery. Well, now it sounds like what you're arguing is that the district court got the factual findings wrong. That is... That's an even more deferential review on our part. I understand that, Your Honor. But the facts are the facts. I can't change those facts. Mr. Lopresti was present, and he was present there after the sanctions motion was first raised. And so counsel is entitled to rely on what an expert says is a forgery or not. Now, had there been no expert, had there been no action at all by Mr. Suspain, then that would make sense. Well, the expert didn't testify at the sanctions hearing, right? That's correct. Just his conclusory opinion was submitted, and the court found that it wasn't credible or reliable. And your opponents brought an expert in, a forensic expert, correct? That's correct. Mr. Regard testified. And Mr. Laba didn't show up at the hearing or agree to be cross-examined about what he knew or didn't know. That's correct. That's correct. Which actually... And counsel also refused to answer questions about his role. Or counsel didn't testify, elected not to testify at that hearing, correct? Counsel elected not to testify, but counsel did subject himself to questioning by the court and did answer questions from the court. Counsel was involved in oral argument, and counsel is under a 3.3 obligation to speak truthfully about the facts of the matter. So this is not a situation where Mr. Laba had testified and the court, viewing his credibility, said, you know what, Mr. Laba, you're not credible. I'm sorry. I reject that. That would be significant. Well, the court did find him not to be credible. The court found his representations to the court not to be credible. Correct, but on a cold record. Okay. On a cold record. And so where we are with this situation is that we have a set of times that we need to look at whether or not there is bad faith involved here. Is there bad faith at the time of the sanctions? No, there's no bad faith. There is a non-reliance on a non-authenticatable document. That, Mr. Sussman, brought to the court's attention right away. When we get to the sanctions hearing, we're not talking about some conspiracy of witnesses because there's no evidence of that. There's no evidence in the sanctions hearing of that. It's simply not credited by the court. I see my time is up. Thank you, counsel. You have reserved your two minutes for rebuttal. Thank you, Your Honor. May it please the court. Before I begin, I had inquired, and I think I know the answer, that as a cross-appellee, am I not permitted to reserve one minute of time? A cross-appellant, excuse me. Right. Well, let's see how the argument goes, but I understand you have a cross-appeal as well. Thank you, Your Honor. I'll begin. To begin, as Your Honors have noted, Magistrate Parker had a detailed and unassailably correct 35-page opinion detailing exactly why the contract on which the suit was commenced was a forgery. Contrary to what opposing counsel has just said, they never did any investigation. The only person that did an investigation as to why they couldn't find the supposed contract was me and my client. We subpoenaed the company that supposedly lost the e-mails. Judge Parker correctly concluded it didn't matter anyway. They still had the electronic records. What Judge Parker concluded was that at no point in time should Mr. LaBarre have relied on this forged contract. There is, incidentally, no claim in any of the three iterations of the complaint about an oral agreement. There is simply a reference to the March 1, 2019 contract, which is the date of the written contract. In at least three sworn declarations, Mr. LaBarre attested and swore to the fact that that contract was genuine. And that he had a copy somewhere, he just couldn't find it because he incorrectly accused this hosting company of deleting his e-mails. He also testified at his deposition that this was a genuine contract. At no point in this case, actually, have they withdrawn the allegation that there was a written contract, including on this appeal. Without any remorse, any contrition, they continue to insist, despite the fact that these arguments were refuted innumerable times below, at a great expense to my client to have to continue to re-litigate these facts, that there simply was no contract. I can go through the facts further, but, again, there's no abuse of discretion by Judge Parker. If there had been any facts that they wished to bring to the court's attention at the hearing, Mr. LaBarre or Mr. Lopresti could have testified. And Mr. Lopresti, frankly, contrary to what opposing counsel just said, never disagreed with anything that our forensic experts said. In fact, his testimony really, his written report, confirmed that this must have been a forgery. He outlined a, I think it was a seven-step Byzantine method by which somebody could have, my client, supposedly Mr. Liebenberg, could have extracted a signature from one document and placed it in here. But, as Judge Parker said, that makes no sense. Somebody in the ordinary course of business wouldn't do that. We have other examples in the record of where Mr. Liebenberg did sign electronically, and he didn't do that here. So Mr. Lopresti, who didn't show up to testify, in fact, we believe confirmed exactly what Mr. Rugard said and what all of the evidence points to, given the under-butted fact that there were innumerable instances where my client expressly refused to sign this contract, that Mr. Lebas was begging for him to sign it. He never signed it, and Mr. Lebas never refuted any of those facts. If I can, I'd like then to turn to the cross-appeal, because, and in this, perhaps your honors will indulge me, because of the personal nature of the attack on me, that I was targeted as part of the conspiracy, a conspiracy that was well, well documented. There's a mountain of evidence that Mr. Lebas given innumerable opportunities. Why don't you tell us what you want in your cross-appeal? So, what, fine. The cross-appeal, as we explained below, has nothing, contrary to what Judge Hellerstein said in his terse decision, had nothing to do with the third-party complaint. In fact, I laboriously went through all of the bills and sequestered out the amounts for the third-party pleadings, so there was an additional roughly $400,000 related to What is the decree that you want from this court? that the court should remand to the district court to calculate and award, as a sanction, the amount for the conspiracy. As we noted, excuse me, that would suffice. And as we noted in our reply brief, this is a Supreme Court case, Cooter and Gehl v. Hartmarks. This is not a trial. Is it money for the conspiracy or the attorney's fees for the entire litigation? So it's for the entire litigation and on two separate grounds. One, consistent with Judge Parker's finding that Mr. Lebas should not have relied on this document at any point. It was an arbitrary line drawing to say that, which was really directed to counsel, Mr. Sussman. Let me ask you two questions. One is, if you wanted attorney's fees for the entire litigation as part of a sanction, why did you enter into a stipulation that each party would cover their own attorney's fees except for those attorney fees related to the pending motion for sanctions, which was to be resolved by the court? That very same pending motion had been fully briefed as of November of 2022. The stipulation was entered in May, May 15, I believe it was, of 2023. We had already laid out in detail. Right. So why would you agree to that? If you wanted attorney's fees for the whole action, you would have said I'm not agreeing as part of our stipulation to settle this case. I'm not agreeing that each party bears their own attorney's fees or carved out that issue. But you didn't. Your Honor, I have to disagree. We did preserve the entirety of the attorney's fee motion. I'm not certain what else I would have or could have said. You could have said we don't agree to each party will bear their own attorney's fees except we reserve the right to ask for attorney's fees for the entirety of the case, which remains pending for the motions for sanctions. But you didn't do that. You only carved out the sanctions. Your Honor, I beg to differ. I think it was absolutely clear to me, and the court below didn't explain this otherwise, we preserved the entirety of our attorney's fee motion, that entire motion. We didn't say in that stipulation that we're only seeking attorney's fees for the forgery but not for the other facts. And, in fact, even consistent with that, we still would be entitled to, just for the forgery, we still would be entitled to fees going back to the very beginning of the case, consistent with Judge Parker's decision. At no point in time should Mr. LaValle have relied on that forged contract. So I'm not sure how we parse the preservation of rights in the stipulation other than that we preserved the entirety of our motion, and I don't know how we then divide up that entire motion so as to deny us recovery from the very beginning of the case. So what I was going to say, and maybe it doesn't need to be said, I was going to ask, is it a personal indulgence? I've been a lawyer for 41 years. Before me, my father was a lawyer for 40 years. My daughter, who's in the gallery, is a public defender in Brooklyn now. More than most people, I would say I've immersed myself, sometimes by choice and sometimes not, in the practice of the law. It both bewilders me and distresses me that the district court could see this unrebutted evidence of not only targeting me personally, but expressly saying that we, the conspirators, want to pursue with absolute vigor every opportunity for fraud, that they agreed amongst themselves that Mr. LaValle was going to file his case, which was, of course, based on a forged contract. Well, other conspirators were going to file elsewhere, a liquidation proceeding is what it said, and the South African court said that that too was a fraudulent claim. How do you maintain that argument at the summary judgment stage where they expressly disavowed reliance on the contract or the agreement? So I don't think they did fully renounce reliance on it because the declaration that Mr. LaValle submitted in connection with the summary judgment motion still insisted that there was a signed contract. But it also says we are not relying on it for purposes of maintaining this action. So at that point, you've got a party, and you know that to argue for summary judgment, you don't have to dispute the agreement because they're not relying on it. You can just point out the deficiencies in the rest of the evidence they pointed to. But at that point, I don't know how you're entitled to your attorney's piece. That's just a regular summary judgment motion. Well, first of all, Judge Hellerstein instructed me to file the summary judgment motion. I didn't know how they were going to respond. It was in response to that motion that they said, I think inconsistently, we're not relying on it, but yet there still was an agreement that the court should take into account. And again, never any expressions of remorse or contrition for having relied really for three years on this forged contract. So I don't know how I could have had the foresight. And frankly, even as I'm standing here now before your honors reading their briefs on the appeal, they're still relying on the existence of this contract. And the case law is consistent on sanctions for fraud. It's not whether or when you say you withdraw it. Just offering into evidence a fraudulent document, the fraud on the court is complete right then and there. And I am not aware of any case, although I have seen language in some of the cases that say, including Judge Parker's decision that he never sought to withdraw it. Even if he had fully sought to withdraw it, he already put me and my client through three and a half years of litigation, expressly relying on a contract that was plainly a forgery. I put them on notice two or three days after the complaint was filed that just looking at the contract, you could see the signature boxes didn't match up. There was misspelling. It was clearly an incomplete contract. My client's name was misspelled in the signature line. Anybody could see. And Mr. Sussman, in response, has done nothing, never did any investigation. He now says for the first time in their briefing on appeal, well, I can't tell you what I did because it would be protected by attorney-client privilege, which I don't think is correct. But it may be work product. But regardless, at no point have they disclosed anything they actually did to try to investigate the fraud. So the belated statement, inconsistent statement that on the one hand, yeah, we're not really relying on it, but, yeah, we really still think there was a contract. The fraud on the court is complete when they, in bad faith, filed an objectively baseless claim based on a forged document. So I'm a little behind my time, so I don't know if you want to hear from me again. I'll await your decision on that as well. We'll see how rebuttal goes. Yes, I understand. Thank you. First of all, Mr. Sussman did extensively detail his investigation after the alleged allegation of forgery, and it's set forth in the record at Joint Appendix 129 through 131 in the form of Mr. Sussman's declaration. It runs out into Mr. Lava's declaration through 219. It is extensive. It is based on multiple conversations with people who are at Orange Butterfly Holdings and who were aware of the existence of an agreement, not the long form contract, but the agreement. With respect to Mr. Moskin's length of time before the bar, I respect Mr. Moskin. He's with an outstanding law firm. But it is black-letter law that a reviewing court does not second-guess that of a district court, particularly with respect to sanctions, that district courts have the unique province with respect to sanctions. This is in Cooter and Gehl v. Hartmarks. They are better placed to marshal the facts. But yet he's insisting on the same illegal urging on your honors to relitigate this issue at the appellate level, and that's entirely inappropriate. We are not relying on the contract. I'm looking very quickly at pages 129 through 131, to which you alluded to, so perhaps I've overlooked something. But they seem to relate more to whether there was some kind of contract, oral or whatever. But I'm not sure I'm seeing right off hand how there was any investigation into whether there was a forwarded contract. Am I missing something here? You're not missing anything, your honor. Right, so that's not what it talks about in these pages. What it is is due diligence with respect to the complaint, which is about a finder's fee agreement. What we've argued, your honor- Right, but not an inquiry into how this document came to be created, forged or otherwise, right? Correct. Mr. Sussman, Mr. Sussman, excuse me, Mr. Laba, in his declaration says, as part of that same section that I cited, that he understood that it was signed, but he never saw Mr. Laperberg sign it. Right, okay. Thank you, your honor. Thank you, counsel. I believe because the substance of the rebuttal dealt with the direct appeal and not the cross appeal. And I assure you, we have all your briefing, all your exhibits, and we will look at them thoroughly. I believe that that does conclude the oral arguments for this matter. We will take the matter under advisement.